IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| **DEBORAH LAUFER,** | * |
| Plaintiff, | * |
| v. | * Civil No. SAG-20-1973 |
| **BRE/ESA P PORTFOLIO, LLC,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Deborah Laufer ("Plaintiff") filed a Complaint on July 3, 2020 against Bre/Esa P Portfolio, LLC ("Defendant"), alleging a violation of the Americans With Disabilities Act ("ADA"). ECF 1. Defendant has filed a Motion to Dismiss the Complaint, contending that Plaintiff lacks Article III standing to sue. ECF 5. Plaintiff filed an opposition, ECF 7, Defendant filed a reply, ECF 11, and Plaintiff, with the Court's permission, filed a sur-reply, ECF 15.

This Court has carefully reviewed all of the filings in this case, and no hearing is necessary to resolve the pending motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's motion will be granted.

**I.      Factual and Procedural Background**

The factual allegations in the Complaint are assumed as true for purposes of this motion. Plaintiff resides in Pasco County, Florida, and requires assistive devices, often including a wheelchair, to ambulate. ECF 1 ¶ 1. Accordingly, she qualifies as an individual with disabilities as defined by the ADA. *Id.*  When visiting a lodging facility, she requires accommodations

including accessible handicap parking spaces, wider doorways, and amenities lowered so that she can reach them from her wheelchair. *Id.*

Plaintiff is a "tester" "for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA."[1] *Id.* ¶ 2. Defendant owns a lodging establishment known as Extended Stay America ("ESA") in Glen Burnie, Maryland. *Id.* ¶ 3. Online reservations for ESA can be made at booking.com, priceline.com, agoda.com, expedia.com, www.trip.com, and orbitz.com. *Id.* ¶ 9. Prospective customers can use those sites to review information about the ESA property and to reserve accommodations. *Id.*

On June 20, 21, 22, 23, and 24 of 2020, Plaintiff "visited the websites for the purpose of reviewing and assessing the accessible features at the Property and ascertain [sic] whether they meet the requirements of 28 CFR Section 36.302(3) and her accessibility needs." *Id.* ¶ 10. Plaintiff alleges that the websites "did not identify or allow for reservation of accessible guest rooms and did not provide sufficient information regarding accessability [sic] at the hotel." *Id.* Plaintiff

---

[1] The relevant ADA standards applicable to places of public accommodation include the following:

**Reservations made by places of lodging.** A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or gues room meets his or her accessibility needs . . .

28 C.F.R. § 36.302(e)(1).

maintains a list of "every hotel she sues" and revisits their online reservations systems before and after her complaints are filed, to see whether the systems have become compliant. *Id.* ¶ 11. Plaintiff alleges a variety of harms she has experienced, including that she "was deprived [sic] the same goods, services, features, facilities, benefits, advantages, and accommodations of the Property available to the general public," *id.* ¶ 10, "is continuously aware that the subject websites remain non-compliant and that it would be a futile gesture to revisit the websites as long as those violations exist unless she is willing to suffer additional discrimination," *id.* ¶ 12, "has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website," *id.* ¶ 13.

## II.     Legal Standards

Defendant asserts that Plaintiff lacks standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III of the United States Constitution restricts the jurisdiction of the federal courts to actual "cases" and "controversies." *Id.* at 559; U.S. Const. Art. III, § 2. In other words, Article III standing exists only where "questions [are] presented in an adversary context." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)) (internal quotation marks omitted). In this context, Plaintiff must have plead facts to plausibly establish standing, because it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (citations omitted).

Thus, the Complaint must include allegations to plausibly establish (1) that Laufer "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that her injury is "fairly traceable to the challenged action of the

defendant"; and (3) that her injury is capable of redress "by a favorable decision." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (quotations omitted). Those "separate criteria" each must be satisfied. *Griffin v. Dep't. of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019).

**III.  Analysis**

This Court agrees with the recent opinion expressed by United States District Judge Paula Xinis in *Laufer v. Ft. Meade Hospitality, LLC*, Civ. No. 20-1974-PX, 2020 WL 6585955, at *3 (Nov. 10, 2020), that the Fourth Circuit's opinion in *Griffin* is "decisive" on the issue of Laufer's standing. In *Griffin*, the plaintiff asserted that the website for the defendant federal credit union lacked sufficient accessibility features to accommodate his visual impairment. 912 F.3d at 652. Claiming to be a "tester" enforcing the ADA's requirements, he sought injunctive relief and attorneys' fees. *Id.* The credit union moved to dismiss for lack of Article III standing, arguing that the plaintiff had not plausibly alleged that he would or could avail himself of its banking services. *Id.* In fact, "[t]he Federal Credit Union Act of 1934 expressly forbids the provision of any products or services" to Griffin. *Id.* at 654. The district court found a lack of Article III standing and dismissed the case pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* at 652.

The Fourth Circuit affirmed the district court's decision, ruling that the "tester" plaintiff had not plausibly alleged a sufficiently concrete injury to confer standing, despite his proffered barriers to website access. *Id.* at 653. The Court acknowledged that "[d]ignitary harms or 'stigmatic injur[ies],' while not tangible, may be sufficiently concrete to constitute injury in fact…" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 754-55 (1984)). However, in *Griffin*, the Court reasoned, "The legal barriers between Griffin and the Credit Union render his injury 'abstract' just as the geographic barriers did in *Allen*." *Id.* at 654. The "dignitary" or "informational harms" Griffin experienced as a tester were insufficiently concrete to establish a justiciable case or

controversy. *Id.* at 654. As the Fourth Circuit explained, "It is true that tester status does not destroy standing. But by the same token it cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow Griffin to avail himself of its services."[2] *Id.* (internal citation omitted).

The *Griffin* court concluded that the plaintiff had not averred sufficiently particularized or imminent harm to establish Article III standing. "For an injury to be particularized," the Court emphasized, "it must affect the plaintiff in a way that is 'individual.'" *Id.* at 654 (quoting Lujan, 504 U.S at 560 n.1). In other words, "[t]here must be some connection between the plaintiff and the defendant that '[]differentiate[s]' the plaintiff so that his injury is not 'common to all members

---

[2] *Griffin* relied on *Allen v. Wright*, 468 US at 755-56, in which the Supreme Court reasoned:

> The consequences of recognizing respondents' standing on the basis of their first claim of injury illustrate why our cases plainly hold that such injury is not judicially cognizable. If the abstract stigmatic injury were cognizable, standing would extend nationwide to all members of the particular racial groups against which the Government was alleged to be discriminating by its grant of a tax exemption to a racially discriminatory school, regardless of the location of that school. All such persons could claim the same sort of abstract stigmatic injury respondents assert in their first claim of injury. A black person in Hawaii could challenge the grant of a tax exemption to a racially discriminatory school in Maine. Recognition of standing in such circumstances would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.' Constitutional limits on the role of the federal courts preclude such a transformation.

The same analysis would apply here: any person with a disability could claim abstract stigmatic injury from a non-accessible reservation website, whether the person had any intent to use the website for its intended purpose or not. Laufer correctly notes that, because lodging establishments are in the business of providing accommodations to travelers, geography alone is insufficient to delineate between a person who might have standing and a person who lacks standing. It is Laufer's own allegations, though, that make clear that she is simply vindicating her value interests as a concerned bystander by performing wide-ranging internet searches of lodging reservations systems, in order to sue "scores" of hotels she believes to be in violation of the ADA's requirements. In other words, she attempts to expand the jurisdiction of the federal courts in exactly the way *Allen* proscribed.

of the public.'" *Id.* at 655 (quoting *United States v. Richardson*, 418 U.S. 166, 177 (1974)). In *Griffin*, then, the plaintiff's failure to allege that he would or could use the credit union's services rendered his allegations insufficient to plead "individual" or "particularized" injury.

Laufer's Complaint is defective because she too has failed to plead individual or particularized injury.[3] Like Griffin, she asserts that the reservation websites do not comport with the ADA's requirements, causing her informational injury because she is unable to assess the suitability of the facility and to reserve a room that adequately accommodates her disability. Her Complaint, however, contains no facts suggesting that she harbored any present intent to stay at ESA or even to set foot in Maryland. Instead, the Complaint clearly and simply alleges that she maintains a list of properties she has sued and continues to monitor their compliance by re-visiting their reservation websites. ECF 1 ¶ 11.

In response to the motion to dismiss, Laufer attached a sworn statement in which she attests that she has "plans to travel to Maryland as soon as the Covid crisis is over and it is safe to travel" and that she intends "to travel all throughout the State, including the Baltimore, Chesapeake Bay and Glen Burnie areas." ECF 7-1 ¶ 5. A sworn statement attached to an opposition to a motion to dismiss cannot resuscitate a defective complaint. As Judge Bennett of this Court explained in *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016):

> In assessing the plausibility of plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court looks to plaintiff's Complaint—not to plaintiff's brief in opposition to [defendant's] Motion to Dismiss. As this Court has explained, "'it is axiomatic that the complaint may not be amended by the briefs in opposition

---

[3] Laufer attempts to distinguish *Griffin* by pointing out that its holding was narrow in scope and "address[ed] only whether [a] plaintiff who is barred by law from making use of defendant's services may sue under the ADA for an allegedly deficient website." 912 F.3d at 653. While Laufer is correct that *Griffin*'s narrow holding does not directly *compel* an outcome here, that does not undermine the strength or applicability of its reasoning. Indeed, *Griffin* explicitly and favorably analogized to the "geographic barriers" in *Allen*, suggesting that its logic extends beyond merely the legal barriers Griffin faced.

to a motion to dismiss.'" *Whiting–Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 334 (D. Md. 2012) (*quoting Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991)), aff'd, 2 F.3d 56 (4th Cir. 1993). A plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). For purposes of the pending Motion, therefore, the Court looks to the Complaint.

Although this Court need not consider the sworn statement in this context, it notes that the plausibility of Plaintiff's newly proffered intent to visit Maryland in general, and ESA in particular, is undermined by her description of her standard practices as tester and her filing of "*scores* of nearly identically drafted Complaints in several jurisdictions." *Ft. Meade*, 2020 WL 6585955, at *4 (emphasis in original). Because Plaintiff is a Florida resident with no apparent history of travel to Maryland, the assertion that she is planning to embark on a comprehensive tour of the entire state as soon as the global pandemic ends is somewhat farfetched. Further analysis is unnecessary because her asserted travel plans are not contained her the Complaint. The question of whether the purported injury Plaintiff proffers in her sworn statement, even if assumed to be true, would be sufficiently "actual and imminent, not conjectural and hypothetical" waits for another day. *See Bishop*, 575 F.3d at 423

This is, ultimately, an unsettled area of standing jurisprudence, with myriad decisions cutting both ways across the country. The Fourth Circuit's reasoning in *Griffin*, however, leads this Court to join the many others in concluding that Plaintiff, like similarly situated ADA testers, failed to plead an injury sufficiently concrete and particularized to confer Article III standing. *See, e.g.*, *Ft. Meade*, 2020 WL 6585955, at *4; *Laufer v. Mann Hosp. LLC*, No. A-20-CV-620-JRN, 2020 WL 6018945, at *5 (W.D. Tx. Sept. 30, 2020); *Rutherford v. JC Resorts, LLC*, No. 19-cv-665-BEN-NLS, 2020 WL 4227558, at *4-5 (S.D. Cal. July 23, 2020); *Hernandez v. Caesars License Co., LLC*, Nos. 19-cv-6087 and 19-cv-6088, 2019 WL 6522740, at *2 (D.N.J. Dec. 4,

7

2019). *But see Kennedy v. R.V. Corp.*, No. 2:19-cv-092, 2020 WL 6386394, at *2-3 (S.D. Ga. Oct. 30, 2020); *Kennedy v. NILA Investment, LLC*, No. 2:19-cv-90, 2020 WL 3578362, at *2-3 (S.D. Ga. July 1, 2020).[4]  Her Complaint will be dismissed for lack of jurisdiction, without prejudice, but any proposed amended complaint will be subject to review for futility.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 5, is granted, and Plaintiff's claims are dismissed without prejudice.  An implementing Order follows.

Dated:   November 19, 2020                                                      /s/
                                                                  Stephanie A. Gallagher
                                                                  United States District Judge

---

[4] Remarkably, Plaintiff filed a Notice of Supplemental Authority on November 13, 2020, describing a ruling issued earlier this month by a United States District Court in the Northern District of Illinois. ECF 16. That Court, applying Seventh Circuit law, found that Plaintiff had standing to sue a lodging establishment in Illinois. *Id.* This Court notes with disfavor counsel's apparent practice of notifying this Court only of favorable rulings, while declining to notify this Court of the unfavorable ruling on the same issue by Judge Xinis, a federal judge in this district, on November 10, 2020. Plaintiff is represented by the same attorney in this case and in Judge Xinis's case, so there can be no question that counsel was aware of her ruling, which rested on Fourth Circuit precedent. Selectively updating the Court on beneficial case law from far afield jurisdictions, while failing to mention adverse developments in a near-identical case from this very district, borders on a violation of counsel's duty of candor to the court. This Court warns counsel not to engage in such conduct in the future.